IN THE UNITED STATES DISTRICT COURT
FOR THE SANDERS DISTRICT OF OHIO
EASTERN DIVISION

**JULIE RIEDER,**

      **Plaintiff,**

v.

      Civil Action 2:20-cv-5858
      Judge Michael H. Watson
      Magistrate Judge Elizabeth P. Deavers

**COMMISSIONER OF**
**SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Julie Rieder, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security Supplemental Security Income benefits ("SSI"). Pending before the Court is Plaintiff's Statement of Errors (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 18), and the administrative record (ECF No. 10). Plaintiff did not file a reply. For the reasons that follow, the Undersigned **RECOMMENDS** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's non-disability decision.

    **I.   BACKGROUND**

Plaintiff protectively filed her application for SSI on February 8, 2018, alleging that

she had been disabled since January 1, 2015. (R. at 202-07.) Plaintiff's application was denied initially in May 2018, and upon reconsideration in October 2018. (R. at 83-95, 96-110.) On February 5, 2020, Plaintiff, represented by counsel, appeared and testified at a hearing held by Administrative Law Judge ("ALJ") Thomas L. Wang. Dr. John R. Finch, a vocational expert ("VE") also appeared and testified. (*Id.*) On March 3, 2020, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 19-37.) On September 8, 2020, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, which became the Commissioner's final decision. (R. at 1-7.) Plaintiff then timely commenced the instant action.

## II.  HEARING TESTIMONY

The ALJ summarized Plaintiff's statements to the agency and the relevant hearing testimony as follows:

> *** [Plaintiff] has pain in her back and lifting heavy weight repetitively for over eight hours would not be possible due to her pain. Her pain is in her lower back and she rates it at a 5-6 out of 10 severity. She treats her condition with exercises. She does not take medication for her pain symptoms. She has some numbness in her hands intermittently and her feet sometimes feel like she is walking on pins. She has a poor grip and tends to drop things. She has an overactive bladder and she needs to use the bathroom "all the time," and estimates she goes about six times during her current four[-]hour shift. She indicated in a function report that she can walk for 10-20 minutes at a time before needing to stop and rest for 10-20 minutes (Ex. 4E/6). Mentally, she testified she has symptoms of bipolar disorder and anxiety and she tends to feel overwhelmed and frustrated easily. Her mind tends to race and she is nervous and has trouble sitting still. She can be forgetful. She has general problems with concentration and focus and she will write things down to help her remember. She has elevated anxiety in stressful situations. She has some depressive symptoms and low energy at times. As for activities of daily living, [Plaintiff] will get up, have a coffee, and take a bath. She manages her own bills. She is able to go to the grocery store by herself.

> Notably, [Plaintiff] first testified that she was unable to work full-time because she was not a "hireable" person due to her age and education level, as opposed to any functional limitations. She also testified that she was presently working part-time because that is what the job entailed, and not due to any physical or mental functional limitation that was preventing her from working full-time.

(R. at 28.)

### III. RELEVANT MEDICAL RECORDS

The ALJ summarized the relevant medical records concerning Plaintiff's mental health symptoms as follows:

> With respect to [Plaintiff]'s alleged mental health symptoms, [Plaintiff] did report anxiety and depression symptoms at times, though her worst panic episode occurred after she had not been compliant with her medication, and she had some office visits during which she reported no anxiety or depression or no significant secondary symptoms. Perhaps most notably, the mental status examinations throughout the record were largely unremarkable aside from some anxious and depressed mood.
>
> As for her reported mental health symptoms, [Plaintiff] reported some anxiety and depression symptoms in the months leading up to the period at issue (Ex. 1F/10). She was noted to have symptoms of bipolar disorder at the time of the filing date in February 2018 (Ex. 1F/2). During the May 2018 consultative examination, she reported mental health symptoms including mood fluctuations, irritability, racing thoughts, fatigue, focus issues, memory issues, and increased anxiety (Ex. 3F/3). In July 2018, she went to the emergency department due to a panic attack related to some ongoing litigation with her ex-husband (Ex. 6F/8, 14). She did not take her Valium the day before or the morning of the panic episode. [Plaintiff] attended some behavioral therapy sessions from April 2019 through January 2020 (Ex. 5F). During this time she reported a depressed and angry mood and she was very frustrated with her living situation. She reported anxiety and depression from May 2018 through June 2019 (Ex. 8F/40-61). She reported having no anxiety or depression in August 2019 (Ex. 8F/35). She also reported no memory difficulties or irritability. She reported some anxiety and depression symptoms in November 2019 (Ex. 8F/29). Her general health was noted to be good in January 2020 (Ex. 8F/26-27). She did report some anxiety and depression, but no memory difficulties or irritability.

> As noted above, the mental status examinations were consistently unremarkable aside from some depressed and anxious mood. For example, prior to the period at issue, in October 2017, [Plaintiff] had a depressed mood and affect and compulsive behavior upon examination (Ex. 1F/6). In February 2018, [Plaintiff] was noted to be alert and oriented with an anxious mood and affect and compulsive behavior (Ex. 1F/2). Also in February 2018, she was noted to be alert and oriented with a normal mood and affect (Ex. 1F/26). In May 2018, [Plaintiff] was polite and cooperative during the consultative examination (Ex. 3F/3). Her speech was normal and her thoughts were logical, coherent, and organized with average intellectual functioning. She was oriented. She had moderate impairment to her recall and recognition functioning, but she was able to recall 2 out of 3 words after a five minute interval. She demonstrated an ability to think abstractly. Her attention and concentration were intact and she had no difficulty following the flow of the interview. She was not distractible. She was able to follow simple instructions. Her mood was frustrated and her affect was agitated. She had no deficit to her insight or judgment. Upon examination in July 2018, [Plaintiff]'s behavior was normal and her mood was anxious (Ex. 6F/10). She was oriented and alert, with a depressed and anxious mood (Ex. 6F/15). She was cooperative with questioning, but resistant to care. Her remote memory was mildly impaired. She displayed poor frustration tolerance and sought immediate gratification of her urges. She displayed partial insight and fair judgment. In October 2018, her intellectual functioning appeared normal and her recent and remote memory was normal (Ex. 4F/3). She had an anxious and depressed mood upon examination from May through June 2018 (Ex. 8F/47-60). She was noted to be cooperative with an appropriate mood and affect from March through June 2019 (Ex. 8F/40-45). In November 2019, she was alert, oriented, and cooperative, with an appropriate mood and affect and normal judgment (Ex. 8F/31). [Plaintiff] generally was noted to have an appropriate affect, good attention and concentration, normal memory, bright intelligence, and fair to normal judgment and insight during behavioral therapy sessions from April 2019 through January 2020 (Ex. 5F).

(R. at 29-30.)

IV.     ADMINISTRATIVE DECISION

On March 3, 2020, the ALJ issued the non-disability determination. (R. at 19-37.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff has not engaged in substantially gainful activity since February 8, 2018, the application date. (R. at 24.) The ALJ found that Plaintiff had the severe impairments of degenerative disc disease of the lumbar spine; bipolar disorder; and an anxiety disorder. (*Id.*) The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.)

Before proceeding to step four, the ALJ set forth Plaintiff's RFC, in pertinent part, as follows:

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with the ability to push/pull limited as per the exertional weight limits, except she can occasionally climb ladders, ropes, or scaffolds; occasionally

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is [Plaintiff] engaged in substantial gainful activity?
2. Does [Plaintiff] suffer from one or more severe impairments?
3. Do [Plaintiff]'s severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering [Plaintiff]'s residual functional capacity, can [Plaintiff] perform his or her past relevant work?
5. Considering [Plaintiff]'s age, education, past work experience, and residual functional capacity, can [Plaintiff] perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

stoop, crouch, or crawl; and tolerate occasional exposure to extreme cold. Mentally, work is limited to simple, routine, and repetitive tasks.

(R. at 27.)

At step four, the ALJ determined that Plaintiff is capable of performing her past relevant work as a production worker. This work does not require the performance of work-related activities precluded by the Plaintiff's RFC. (R. at 32.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act since February 8, 2018. (*Id.*)

## V. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial

evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI. ANALYSIS

Plaintiff sets forth three assignments of error: (1) the ALJ failed to classify her overactive bladder as a medically determinable impairment; (2) the ALJ's RFC finding is not supported by substantial evidence because he fails to account for the full extent of Plaintiff's limitations in concentration, persistence, and pace; and (3) the ALJ failed to adequately evaluate the opinion of Peggy Gillespie, Plaintiff's Vocational Rehabilitation Counselor with the Ohio Rehabilitation Services Commission. (ECF No. 13).

### A. Step Two

Plaintiff first contends that the ALJ failed to classify her overactive bladder as a medically determinable impairment at step two. By extension, Plaintiff argues that the ALJ gave no consideration to the potential impact that this impairment would have on her RFC. (ECF No. 13 at 4-7). Plaintiff's arguments are not well-taken.

7

At step two, the ALJ must consider whether Plaintiff's alleged impairments constitute "medically determinable" impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii).  A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques[,]" and "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Additionally, to be classified as "medically determinable" an impairment must meet the durational requirement, meaning, "it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. "'If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC.'" *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021) (quoting *Jones v. Comm'r of Soc. Sec.*, No. 3:15-cv-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017). "At step two of the sequential analysis, Plaintiff has the burden of proving the existence of a medically determinable impairment." *Id.*  (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (stating that the burden of proof lies with the claimant at steps one through four of the process and only shifts to the ALJ at step five); *Smith v. Comm'r of Soc. Sec.*, No. 2:20-CV-5473, 2021 WL 3883061, at *3 (S.D. Ohio Aug. 31, 2021) ("At step two of the sequential evaluation process, Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement.")).

Here, Plaintiff does not cite to any medically acceptable clinical or laboratory diagnostic techniques or any objective medical evidence from an acceptable medical source establishing the

existence of her overactive bladder condition. At best, she relies on several entries in Progress Notes from Dr. Elmer Diltz, Jr. noting, in the context of her "problem list," "Overactive bladder/ICD-9-CM 596.51 / Confirmed." (R. at 308, 323, 361, 509, 537, 723.) None of these one-line entries, however, "document" Plaintiff's overactive bladder either in the way Plaintiff contends or as required by the authority discussed above. That is, "'[t]he mere diagnosis ..., of course, says nothing about the severity of the condition.'" *Smith,* at *4 (quoting *Higgs v. Bowen,* 880 F.2d 860, 863 (6th Cir. 1988). Plaintiff's only evidence that her overactive bladder impairs her functioning is her own testimony, asserting that "she needs to use the bathroom 'all the time' and estimat[ing] that she goes about six times during her current four hour shift." (R.at 28 citing R. at 49-50.) But the ALJ was not required to accept this testimony in the absence of any objective medical evidence to that effect. *Hammond v. Comm'r of Soc. Sec.,* No. 2:20-CV-5562, 2021 WL 4268114, at *5 (S.D. Ohio Sept. 20, 2021), *report and recommendation adopted,* No. 2:20-CV-5562, 2021 WL 5299842 (S.D. Ohio Nov. 15, 2021) (citation omitted). Elsewhere in the record, Plaintiff's limited complaints of frequent urination and pelvic pain in connection with a urinary infection (R. at 500-03) and the consultative examiner's note of an overactive bladder in Plaintiff's medical history also fail to meet the requisite evidentiary standard.

Moreover, Plaintiff's claim that the ALJ failed to give her overactive bladder condition any consideration inaccurately portrays his decision. In his discussion, the ALJ specifically acknowledged Plaintiff's testimony regarding her overactive bladder. (R. at 28.) At the same time, he also noted that the record documents "only conservative treatment" "for relatively minor, resolved, nonrecurring, or controlled complaints and conditions." (R. at 25.) His non-exhaustive

list of such conditions does not mention Plaintiff's overactive bladder specifically, but his discussion does cite to particular exhibits identifying this condition in her "problem list." (R. at 25 citing R. at 318; 466-627.) Notably, Plaintiff has not identified any evidence that her overactive bladder, separate and apart from the other impairments recognized by the ALJ, limits her functioning in any way.

In short, it is Plaintiff's burden to put forth the required evidence necessary to demonstrate that her alleged overactive bladder is a medically determinable impairment. She has not met that burden here. Accordingly, the ALJ did not err in determining that Plaintiff did not have a medically determinable impairment of overactive bladder. *Smith*, 2021 WL 3883061, at *5. Further, because the ALJ properly determined that Plaintiff's overactive bladder is not a medically determinable impairment, he was not required to consider it in assessing the RFC. *See Jones*, 2017 WL 540923, at *6. For these reasons, Plaintiff's first objection is without merit.

    **B. RFC**

Plaintiff argues next that the ALJ's RFC fails to convey her limitations as to concentration, persistence and pace. Specifically, Plaintiff asserts that the RFC fails to acknowledge that she "may be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job. (ECF No. 13 at 10.) By extension, Plaintiff argues that the hypothetical question to the vocational expert was not adequate.

The determination of a plaintiff's RFC is entirely within the purview of the ALJ, and "this Court will defer to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th

Cir. 2005). Here, the ALJ found that Plaintiff had a moderate limitation with respect to concentration, persistence, or pace. (R. at 26.) When discussing this functional area, the ALJ determined:

> [Plaintiff] contended that she has limitations in concentrating generally and focusing generally. She testified her mind tends to race and she is nervous and has trouble sitting still. On the other hand, [Plaintiff] said that she is also able to read and manage her own funds. Additionally, the record fails to show any mention of distractibility during mental status examinations. Indeed, she was generally noted to have no issues with concentration or attention during examinations, and the consultative examiner specifically remarked that she was able to maintain attention and concentration as observed during the interview. She was regularly noted to be alert and oriented.

(*Id.*) In his RFC determination, the ALJ specifically noted that Plaintiff was limited to "simple, routine, and repetitive tasks." (R. at 27.) Indeed, the ALJ carefully considered the evidence in the record regarding Plaintiff's limitations in concentration, persistence, and pace. To this end, the ALJ set forth the following:

> The opinion of psychological consultative examiner, Princess Black, Psy.D., is persuasive (Ex. 3F/3). Dr. Black opined that the claimant had mild limitation in her ability to understand, remember, and carry out instructions and she could carry out simple and complex instructions; she was able to complete simple tasks, but may struggle focusing on multi-step tasks; no functional limitation with interacting with others was identified; and she would respond appropriately to work pressures in a work setting. This opinion was made after a thorough evaluation of the claimant and it is generally consistent with the broader record showing some symptoms of depression and anxiety leading to racing thoughts and lack of focus. Indeed, the claimant emphasized her focus and concentration issues in her hearing testimony. It should be noted, however, that there is little indication of concentration or attention issues in the concurrent examination or the mental status examinations in the broader record. Nonetheless, the undersigned has accounted for the opinion of Dr. Black as well as the claimant's testimony in limiting the claimant to simple, routine, and repetitive tasks.

(R. at 31.)

11

This Court must look at the record as a whole and determine if substantial evidence supports the ALJ's RFC.  *Schalk v. Comm'r of Soc. Sec.*, No. 10-13894, 2011 WL 4406824, at *11 (E.D. Mich. August 30, 2011), *report and recommendation adopted*, No. 10-13894, 2011 WL 4406332 (E.D. Mich. Sept. 22, 2011).   In the instant case, the ALJ's RFC determination included limitations addressed to concentration, persistence and pace.   Plaintiff fails to explain why the facts here require a more detailed hypothetical question. *Lewicki v. Comm'r of Soc. Sec.*, No. 09-11844, 2010 WL 3905375, at *3 (E.D. Mich. Sept. 30, 2010) (While "[t]here may be cases where such moderate limitations preclude the performance of even some simple, unskilled tasks[, plaintiff does not] explain why the facts of this particular case require a more detailed hypothetical question to adequately account for his own moderate limitations in concentration, persistence, or pace.")  Instead, Plaintiff simply points to evidence in the record that she believes demonstrates her limitations in concentration, persistence, and pace. (ECF No. 13, at 9, citing symptoms.)  Beyond this, Plaintiff cites speculative limitations that she believes should have been included in the RFC. *See* ECF No. 13 at 10 ("the ALJ failed to acknowledge that [she] *may* be unable to stay alert, or work at a consistent pace, even at a simple, unskilled, routine job.")  She further speculates that identified jobs could have been excluded "if [she] required repetition of directions" or "only visual demonstrations."  (*Id.*)

Here, as evident from the excerpts above, the ALJ properly evaluated the record and provided sufficient explanation based on substantial evidence, specifically the opinion offered by Dr. Black, that Plaintiff would be able to complete simple tasks.  Plaintiff has offered nothing to the contrary beyond citations to particular symptoms.  Even if Plaintiff's listing of symptoms was

12

sufficient evidence to support a conclusion opposite that reached by the ALJ, it would not be enough here. *Longworth,* 402 F.3d at 595. In short, reviewing the record as a whole, substantial evidence demonstrates that the ALJ's RFC adequately accounted for all of the limitations he found credible. Accordingly, there is no merit to Plaintiffs' second objection.

### C. Evaluation of the Vocational Rehabilitation Counselor's Opinion

Finally, Plaintiff argues that in crafting the RFC, the ALJ should have given weight to the opinion of Peggy Gillespie, Vocational Rehabilitation Counselor with the Ohio Rehabilitation Services Commission. (ECF No. 13 at 11-13). The Undersigned disagrees.

As noted above, Plaintiff filed her application for benefits on February 8, 2018. (R. at 202-07.) The regulations governing this claim state that for "claims filed on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits." 20 C.F.R. § 416.904. As the regulations explain, the reason for this is because "[o]ther governmental agencies and nongovernmental entities—such as the [Ohio Rehabilitation Services Commission]. . . — make disability . . . and other benefits decisions for their own programs using their own rules." *Id.* Accordingly, the regulations further confirm that "[b]ecause a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled . . . under our rules." *Id*.

"Even under the prior regulations, the Sixth Circuit held that other governmental agency's disability rating does not bind an ALJ." *Boggs v. Comm'r of Soc. Sec.,* No. 2:20-CV-6135, 2021

WL 4771267 (S.D. Ohio Oct. 13, 2021) (citing *See Turcus v. Soc. Sec. Admin.*, 110 F. App'x, 630, 632 (6th Cir. 2004) ("[A] decision by another government agency as to an individual's disability is not binding upon the Social Security Administration.")). Accordingly, the ALJ was not required to provide any analysis about Plaintiff's disability rating under the Ohio Rehabilitation Services Commission's rules for good reason. *Id*. Moreover, in addition to the regulations cited at 20 C.F.R. § 416.904 above, the regulations about the way in which the agency considers evidence for claims filed after March 27, 2017, also provide an independent basis explaining the ALJ's analysis in this case. *Id.* Specifically, the regulations at 20 C.F.R. § 416.920b for claims filed on or after March 27, 2017, deem decisions by other governmental agencies and nongovernmental entities as well as statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." *Id.* (quoting 20 C.F.R. § 416.920b(c)(1)-(3) (2017)). The regulations make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision." *Id*. (quoting 20 C.F.R. § 416.920b(c)). An ALJ, however, is required "to consider all of the supporting evidence underlying [the other decision] received as evidence. *Id.* (quoting 20 C.F.R. § 416.904).

  Here, rather than cite to any underlying, supporting evidence the ALJ failed to consider, Plaintiff simply argues, incorrectly, that the ALJ was required to consider Ms. Gillespie's decision itself. However, consistent with the above, the ALJ specifically noted that he "did not provide articulation about the evidence that is inherently neither valuable nor persuasive in

14

accordance with 20 CFR 416.920b(c)." (R. at 31.) As explained, this was not error. Accordingly, this contention of error also is without merit.

## VII. CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Based on the foregoing, it is therefore, **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED.**

## VIII. PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

Date: December 13, 2021　　　　　　　　　　　*s/ Elizabeth A. Preston Deavers*
　　　　　　　　　　　　　　　　　　　　　　ELIZABETH A. PRESTON DEAVERS
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE